## JOHN BEAUMONT *v.* THE STATE.

1. ARSON—INDICTMENT for arson charged that the house, when burned, contained a little child, who was seriously injured by the fire. *Held,* that this allegation did not infect the indictment with duplicity, and, if true, was a proper allegation, in view of Article 706 of the Penal Code, which empowers juries to increase the punishment for arson when bodily injury less than death ensued from the offense. Pasc. Dig., Art. 2337.

2. PRACTICE.—It is not error to receive the verdict of a jury in the absence of the defendant's counsel, the defendant himself being present and suffering no prejudice.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. MOORE.

The opinion sufficiently indicates the facts.

*L. Lindsay,* for the appellant. By the Bill of Rights, in the Constitution of this state, as in the other states of the American Union, every citizen is guaranteed the right of being heard in all criminal prosecutions against him, by himself or counsel, or both. This is one of the distinguishing features of American civil liberty from the civil liberty as

held and practised by other civilized nations of the world. No man can properly be deprived of this right and such others as are enumerated in the Bill of Rights without palpable wrong, because all such rights are specifically excepted out of the general powers of government, and neither the legislature, nor courts, nor executive magistrates can divest a citizen of these rights without transcending the bounds of legitimate authority. This is the theory of American government, and should be the practice, if it be desirable to secure the confidence and esteem of American citizenship. It is in consonance with this principle in our institutions that the legislature, feeling the imperative force of this provision in the Bill of Rights, has provided that when a defendant is brought into court to be arraigned, if it appear he has no counsel, the court shall appoint one for him if he be too poor to employ one for himself. In harmony with the same principle it is also provided by law that when a person has been brought before a magistrate upon any accusation of an offense, that officer shall allow the accused sufficient time to procure the aid of counsel. Hence, too, it has been provided in the Criminal Code that it shall be a ground for new trial to deny the defendant the benefit of counsel. All these provisions of the law are nothing more than recognitions of the right of the citizen, under the guarantee of the Bill of Rights, to demand and claim the benefit of counsel through the whole ordeal of a trial involving the final destiny of his life or his liberty. Not counsel for a part or a fraction of time of that ordeal, but from the beginning to the ending of the whole judicial process, which is only consummated in the final judgment or sentence. So that, if the counsel of the defendant should drop dead at the conclusion of his final speech to the jury, if the defendant was unable to procure the services of other counsel, according to the spirit, genius, and the very letter of the chartered rights of the citizen, it would be the duty of the court to

assign other counsel to complete and fulfill the obligation. If, then, the accused cannot be denied the benefit of counsel at the beginning of his trial, at what stage .of that trial can so grave a responsibility of practically denying that right be assumed before his conviction becomes a finality under all the forms of law?

According to Article 3082, Paschal's Digest (Cr. Pro. 528), it is enacted that in every case of felony the defendant shall be present in court when any proceeding touching further instructions to the jury, in rehearing the statements of a witness, and in hearing the testimony of a juror who has a personal knowledge of a fact, is had. And in all these cases the court is enjoined to have the counsel of the defendant called, which necessarily implies (bearing in mind the guarantee in the Bill of Rights) that, if the counsel of the defendant is wantonly and perversely absent, the court is bound either to allow the defendant to engage other counsel, or the court shall appoint one for him. The very fact that the Bill of Rights protects the citizen in the enjoyment of this right to be heard by his counsel, implies also that the right was conceded, because the generality of mankind were too ignorant and uninformed to know, in the complex machinery of civil government, how to avail themselves of its instrumentalities to shield and protect them from the wily machinations of the adroit and the artful, who often make the machinery of the law an engine of oppression, instead of a safe refuge for the ignorant and weak, whom, theoretically at least, all governments were instituted to shield and protect.

The right to *poll* the jury, when desired, is one of the steps to be taken in the final consummation of a criminal trial; and it would seem, upon every principle of right and reason, there is no more authority for debarring a defendant from that right than for arresting him in taking any other step, through his counsel, in the whole progress of his trial.

See Art. 3089, Pasc. Dig. Counsel is selected or given the defendant, by the appointment of the court, for the purpose of advising him at every step in the progress of his trial; and to divest him of that counsel—it might be at the most critical moment of that trial—would be rendering the guarantee of the Bill of Rights of none effect.

*George McCormick*, Assistant Attorney General, filed an able brief for the State.

Ector, Presiding Judge. The appellant was convicted of arson by the jury, and his punishment assessed at seven years' confinement in the penitentiary.

The exceptions taken to the indictment were properly overruled. That part of the indictment which charges that a little child was in the house which was set on fire is not fatal to the indictment on the ground of duplicity. The counsel for the defendant moved the court to quash the indictment because it charges the defendant with burning the house of Charlotte Ware and also with burning his own house. This is not a proper construction to be placed on the language used in the indictment. It certainly charges the defendant with the willful burning of the dwelling-house of Charlotte Ware, and of no one else.

Doubtless it was the object of the pleader, in setting out in the indictment that bodily injury (less than death) was caused to the little child by reason of setting fire to said dwelling-house, to leave it discretionary with the jury, under a proper charge, to increase the punishment—not exceeding double that which is prescribed for the offense, under the statute, in cases where no such injury is suffered—if they found the defendant guilty. By a reference to Article 2337, Criminal Code (Pasc. Dig.), this was just what the pleader was authorized to do. The court below seems not to have noticed the law upon this branch of the subject; and

.as no harm did result, or could have possibly resulted, to the prisoner—it being an error, if an error at all, entirely to the advantage of the defendant—he can claim nothing from it.

To render an indictment liable to the objection of duplicity, it has generally been held that the duplicity must be such .as to produce confusion and uncertainty as to what offense was really intended to be charged; and so, also, where two distinct offenses are embraced in one count. If, however, the indictment charges the defendant with an offense which, in its nature and in the form of the allegation, includes several smaller ones—as, if it charges a murder which includes manslaughter and every other degree of culpable homicide—it is not for this reason multifarious. An indictment for an assault with intent to murder in the same .count may charge also an aggravated assault, and still it would be a good indictment for the first offense.

The point which the counsel for the defendant mostly relies on, it would seem from his brief, for a reversal of the judgment is that the court received the verdict from the hands of the jury in the absence of the defendant's counsel. This point is not presented in a bill of exceptions. The .counsel for the defendant files an affidavit, which is copied into the record. We will admit that this point is properly before the court, and what figure does it cut in the case? The cause had been submitted to the jury. The court took .a recess for dinner, leaving the jury in consultation over the case. After the recess the jury came in with their verdict, and were ready to deliver it. The defendant was present before the court, but his counsel had not returned from dinner. Under this state of facts the court received the verdict of the jury. We cannot perceive any harm that was done to the defendant. This is not unusual, and by it the defendant was deprived of no legal right. If a verdict cannot be received during the absence of defendants'

counsel, it would often happen that the business of the country and the courts would be uselessly delayed, and the ends of justice might be defeated entirely. We know of no provision of the statute which requires the counsel for the prisoner to be present in court when the jury return their verdict.

In cases of felony the defendant must be present when the verdict is read, unless he escapes after the commencement of the trial of the cause; but in cases of misdemeanor it may be received and read in his absence. Art. 3090,. Code of Cr. Pro.

The testimony shows (if the witnesses are to be believed) that the defendant had become offended towards the owner of the house burnt; that he had assisted in building the house for her before this ill-feeling originated; that he had told a witness the day before the fire the building would soon be in ashes, and had given his reasons for it. Soon after the fire had been extinguished he admitted to another witness his guilty agency. If the judgment rested on the testimony of the witness Harrison Evans alone, we would reverse it; but it does not, as will be seen from an examination of the record. The charge of the court was certainly as favorable to the defendant as he had any right to expect. The jury before whom the case was tried, after hearing all the evidence, having a full opportunity of seeing the witnesses and their manner of testifying, said, by their verdict, that the defendant was guilty as charged in the indictment. The district court refused to grant him a new trial. After a careful examination of the record we find no error committed by the lower court on the trial, and the evidence was sufficient to support the judgment.

The judgment of the district court is, therefore, affirmed.

*Affirmed.*